IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | CRIMINAL ACTION NO. 1:19-CR-76-LMM-CCB-1 |
| v. | |
| JUAN TORRES CHAVEZ, | |
| Defendant. | |

**FINAL REPORT AND RECOMMENDATION**

Defendant Juan Torres Chavez is charged with conspiring to distribute methamphetamine, heroin, and fentanyl (Count 1); possessing with the intent to distribute methamphetamine, heroin, and fentanyl (Counts 4–7, 10, 11, 14, 15, 21, 24); conspiring to engage in money laundering (Count 29); and money laundering (Counts 30–35) (Doc. 393). Defendant filed a motion to suppress evidence on February 11, 2020, (Doc. 681), which he then withdrew, (Doc. 692). He later filed an amended motion to suppress information obtained from wiretaps, (Doc. 718), a perfected wiretap suppression motion, (Doc. 771), and an amended perfected wiretap suppression motion, (Doc. 914). He states that the final motion replaces those that came before it, (Doc. 914 at 1), and, as such, I recommend that the

pending-but-now-perfected motions, (Docs. 718, 771), be **DENIED AS MOOT**. For the reasons stated below, I recommend that the amended perfected motion, (Doc. 914), be **DENIED**.

### I.     Background

During the course of the Government's investigation, Defendant was incarcerated within the Georgia Department of Corrections. (Doc. 914 at 2; Doc. 934-4 at 8 (noting that Defendant was an inmate at Dooly State Prison)). Indeed, a review of Defendant's profile on the Georgia Department of Corrections' website reveals that he has been in state prison since April 27, 2010—many years before the charged crimes were alleged to have occurred in 2018 and 2019. *See* https://gdc.ga.gov/GDC/Offender/Query (last visited November 18, 2022). In his motion to suppress, Defendant "objects" to at least four wiretap applications, affidavits, and orders "for which he was a listed target." (Doc. 914 at 1–2). Although Defendant does not identify any specific intercepted communications that he seeks to suppress, his motion focuses on Target Telephone 2 (TT2), which the Government believes he used. (Doc. 934 at 5). That being said, Defendant also objects to "each of the wiretaps in this case from TT1 forward to the extent they have the same deficiencies as the specific ones for which [Defendant] was explicitly targeted." (Doc. 914 at 2 n.3). He maintains that the affidavits offered in

support of the wiretap applications fail to establish probable cause and necessity to justify the interceptions. *Id.* at 10.

The Government offers a number of arguments in response to Defendant's motion. First, it maintains that Defendant has not met his burden of showing that he is an aggrieved person because he has not affirmed that he is the person named in the applications or shown that he was a party to any of the intercepted communications. (Doc. 934 at 7–9). Second, the Government argues that Defendant had no subjective or objectively reasonable expectation of privacy in the communications that occurred while he was in prison. *Id.* at 9–11. Third, the Government argues that Defendant's motion is too generalized and conclusory and, as such, fails to demonstrate that any particular evidence should be suppressed. *Id.* at 11–12. Fourth, the Government maintains that, to the extent it can determine what Defendant is seeking to suppress, the affidavits set forth sufficient probable cause and necessity for the interceptions. *Id.* at 13–22. Finally, the Government argues that even if probable cause is lacking, the motion should be denied based on good faith. *Id.* at 22–24. Defendant did not file a reply brief to address any of the issues raised by the Government, and the matter is now ripe for review.

**II.     Analysis**

As noted above, the Government raises a number of arguments in response to Defendant's motion. The Court elects to begin and end the analysis with one of them—that Defendant had no subjective or objectively reasonable expectation of privacy in any communications that occurred over a contraband cellphone while he was in prison.

The Fourth Amendment provides, in relevant part, for "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. To prevail on a Fourth Amendment claim, a defendant must show two things:

> First, there must be a search and seizure of that individual's person, house, papers or effects, conducted by an agent of the government; stated differently, there must be an invasion of the claimant's reasonable expectation of privacy. Second, the challenged search and seizure must be "unreasonable," as not all searches and seizures are proscribed by the fourth amendment, but only those that are "unreasonable."

*United States v. Segura-Baltazar*, 448 F.3d 1281, 1285 (11th Cir. 2006) (internal quotation marks omitted). "The party alleging an unconstitutional search must establish both a subjective and an objective expectation of privacy." *Id.* at 1286. "The subjective component requires that a person exhibit an actual expectation of privacy, while the objective component requires that the privacy expectation be

4

one that society is prepared to recognize as reasonable." *Id.* (internal quotation marks omitted). This Fourth Amendment framework applies to recorded conversations. *See United States v. McKinnon*, 985 F.2d 525, 527 (11th Cir. 1993) (analyzing whether the defendant had a subjective and objectively reasonable expectation of privacy regarding a conversation the police surreptitiously recorded while the defendant was sitting in a patrol car).

In *Hudson v. Palmer*, the Supreme Court held "that society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell and that, accordingly, the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." 468 U.S. 517, 526 (1984), *overruled in part on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986). That case involved a physical search of a prisoner's cell, and the Court balanced the need to maintain order and ferret out contraband in a prison against an inmate's interest in privacy. *Id.* at 527–30. It noted that a "prison shares none of the attributes of privacy of a home, an automobile, an office, or a hotel room" and ultimately concluded that a "right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order." *Id.* at 527–28 (internal quotation marks and footnote

omitted). The Court therefore laid down a categorical rule that prisoners do "not have a reasonable expectation of privacy enabling [them] to invoke the protections of the Fourth Amendment." *Id.* at 530; *see also id.* at 538 (O'Connor, J., concurring) (agreeing with the Court's "categorical treatment" of the issue and concluding that the "fact of arrest and incarceration abates all legitimate Fourth Amendment privacy and possessory interests in personal effects, and therefore all searches and seizures of the contents of an inmate's cell are reasonable" (internal citations omitted)).

Although this case does not involve the physical search of a cell, little to no inferential leap is necessary to get from the Court's holding that a prisoner has no reasonable expectation of privacy in his cell to the corollary here that Defendant had no reasonable expectation of privacy in the conversations he had, in his prison cell, on a contraband phone. The reasons the Supreme Court articulated for why there is no reasonable Fourth Amendment expectation of privacy within the prison walls—the need to maintain the security of the institution and keep out dangerous contraband—apply equally (if not more) to conversations over a contraband phone as to a physical search of a cell. Indeed, the reason for allowing the random physical search of the prison cell in *Hudson* was to allow prison officials the chance to detect and confiscate contraband, like the cell phone that Defendant utilized to

have the conversations that the Government intercepted in this case. *See id.* at 528 ("We are satisfied that society would insist that the prisoner's expectation of privacy always yield to what must be considered the paramount interest in institutional security."). It would be anomalous indeed to say that guards could search a prison cell at will to confiscate something like a cell phone (which they can do under *Hudson* without running afoul of the Fourth Amendment), while at the same time saying that a prisoner has a reasonable expectation of privacy in the inside-the-walls conversations he has using that cell phone.

Unsurprisingly, courts that have considered the issue have found that a prisoner has no subjective or objectively reasonable expectation of privacy in conversations over a contraband cell phone. *See, e.g., United States v. Bash*, No. 1:20-CR-00238-JLT-SKO, 2022 WL 4788482, at *3 (E.D. Cal. Oct. 3, 2022) (finding that an inmate had no reasonable expectation of privacy in communications that took place over a contraband cellphone); *United States v. Nava*, No. 1:17-CR-347-TCB-CMS, 2018 WL 5624731, at *4 (N.D. Ga. Aug. 9, 2018) (holding that "there surely can be no expectation of privacy in statements made on a contraband phone from a prison cell"), *adopted by* 2018 WL 4350183 (N.D. Ga. Sept. 12, 2018); *United States v. Rodriguez*, No. 13cr4514-BEN, 2015 WL 468358, at *1–2 (S.D. Cal. Feb. 3, 2015)

(holding that a prisoner has no Fourth Amendment right to privacy upon which to base a motion to suppress conversations obtained from a wiretap).

Nor does Title III create a statutory right for a prisoner to suppress conversations made over a contraband cellphone. Title III provides that:

> Any aggrieved person . . . may move to suppress the contents of any wire or oral communication intercepted pursuant to this chapter, or evidence derived therefrom, on the grounds that—
>
> (i) the communication was unlawfully intercepted;
> (ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or
> (iii) the interception was not made in conformity with the order of authorization or approval.

18 U.S.C. § 2518(10)(a). An "oral communication" means "any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation . . ." 18 U.S.C. § 2510(2). The analysis for determining whether someone has an expectation of privacy in an oral communication under Title III is the same as the constitutional test under the Fourth Amendment. *McKinnon*, 985 F.2d at 527 (holding that "the statutory and constitutional test is whether a reasonable or justifiable expectation of privacy exists"); *Nava*, 2018 WL 5624731, at *3 (holding that "courts should apply the same standards used in Fourth Amendment

8

jurisprudence . . . to determine whether a statement qualifies as an 'oral communication' under Title III").

Because the statutory standard mirrors the constitutional one, Defendant has no right under Title III to seek to suppress the conversations he had using a contraband cell phone while in prison. *See Nava*, 2018 WL 5624731, at *4; *United States v. Morris*, No. 1:15-CR-351-WSD, 2016 WL 4267990, at *5 (N.D. Ga. Aug. 15, 2016) (holding that "it must be the case that Congress intended to except from the purview of Title III's law enforcement restrictions, the interception of contraband cellular telephone communications from or to an inmate within a jail or prison" (internal quotation marks and alteration omitted)); *Rodriguez*, 2015 WL 468358, at *3 ("Title III does not apply to the interception by law enforcement officers of a telephone communication from a prisoner using a contraband cellular telephone."); *United States v. York*, 1:16-cr-00069-LJO-SKO-11, 2017 WL 5068143, at *4 (E.D. Cal. Sept. 29, 2017) (concluding that a prisoner had neither a Fourth Amendment nor statutory right to privacy in conversations over a contraband prison cell phone).

For the reasons stated above, Defendant had no subjective or objectively reasonable expectation of privacy in the conversations he had on a cell phone while in prison. As such, neither the Fourth Amendment nor Title III requires that

Case 1:19-cr-00076-LMM-CCB   Document 1140   Filed 11/18/22   Page 10 of 10

those recorded phone conversations be suppressed, and Defendant's motion (Doc. 914), should be **DENIED**. In light of that holding, the Court declines to consider the Government's other arguments for why the motion should be denied.[1]

### III.  Conclusion

For the reasons stated above, the undersigned **RECOMMENDS** that Defendant's motion to suppress, (Doc. 914), be **DENIED** and that the earlier filed motions to suppress, (Docs. 718, 771) be **DEINED AS MOOT**.

There are no other motions pending related to this Defendant, and his case is now **READY FOR TRIAL**.[2]

**IT IS SO RECOMMENDED,** this 18th day of November, 2022.

_____
CHRISTOPHER C. BLY
UNITED STATES MAGISTRATE JUDGE

---

[1] At the very least, however, the Court shares the Government's concern that Defendant's motion is impermissibly generalized and conclusory when it comes to the merits of why the applications fail to set forth probable cause or necessity. In the event that the District Judge disagrees with the analysis set forth above, the Court will require the Defendant to file a more particularized motion prior to addressing the argument that the applications fail to set forth probable cause or necessity.

[2] The undersigned will continue to work with the parties to address the medical issues that were the subject of the conference held today.